**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHRISTOPHER REGALADO,<br><br>    Plaintiff,<br><br>    v.<br><br>CYNTHIA Y. TAMPKINS, Warden of California Rehabilitation Center, Norco,<br><br>    Defendant. | CASE NO. 1:14-CV-1612 SMS<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DENIAL OF THE PETITION |

Petitioner Christopher Regalado is a state prisoner proceeding *pro se* and *in forma pauperis* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Doc. 1. On October 20, 2014, this Court screened the petition and, without addressing the merits, concluded that it was not plain from the allegations that Petitioner is not entitled to relief and directed Respondent to file a response. Doc. 4. Respondent filed an answer addressing the merits of the petition. Doc. 17. Petitioner did not file a traverse. On April 9, 2015, the Court granted a stay and abeyance pending resolution of unexhausted claims, and directed Petitioner to file a status report within thirty days advising the Court of the State habeas proceeding status. Doc. 20. Petitioner did not file a status report in response to the order granting the stay or the subsequent OSC. The Court lifted the stay to proceed only on Petitioner's exhausted claim. Doc. 22. For the following reasons, the Court recommends that the petition be denied.

**I.     BACKGROUND**

Petitioner was convicted by a jury of burglary and two counts of robbery, and found true

the personal use of a weapon enhancement in the first count of robbery.[1] The trial court sentenced Petitioner to an aggregate term of six years, four months. At the preliminary hearing, witness Guillermo Canseco Damian appeared and testified that he awoke on July 21, 2011 to find Petitioner holding a kitchen knife to his throat. He testified as to several other details, including what Petitioner was wearing and that he had seen Petitioner's face. Mr. Damian identified Petitioner as the robber, that clothes found in Petitioner's bedroom were those having been worn by the robber, and identified a knife as the knife used during the robbery. Petitioner was arraigned on this information and the case was set for jury trial.

Although the district attorney issued a subpoena a month prior for Mr. Damian, he had not been served and did not appear in court on the first day of trial, October 11, 2011. The trial was trailed to October 12, 2011 at the prosecutor's request in order to locate Mr. Damien. On October 12, 2011, the court trailed the matter to the afternoon and authorized the prosecutor to file a motion to admit Mr. Damian's preliminary hearing testimony.

At the hearing on the motion, an investigator testified that he was assigned to locate Mr. Damian on October 11, 2011. He went to several addresses, including his last known address, and knocked on the door with no response. He spoke with a woman who lived in a residence in the backyard of the same location. She said that she collected rent for that address, and Mr. Damian had moved to Mexico about a month and a half earlier. The investigator attempted to contact other witnesses in the case but was not able to locate them at their last known addresses. An investigative assistant also testified that she was assigned to locate Mr. Damian on October 12, 2011. She checked the computer system and found that the subpoenas may have reversed Mr. Damian's last names. She ran the name both ways and found an active warrant for a Guillermo Conseco, who lived in the same city but had a different birth date as Mr. Damian. The investigative assistant went through a "due diligence" checklist compiled by the district attorney's office and checked the DMV, a database monitored by the DOJ which provides credit information and personal information, a Haines Directory, Bakersfield Police Department records, Kern County Probation Department records, state parole records, and welfare benefit records. She called

---

[1] This brief factual background is summarized from the California Court of Appeals opinion.

several local hospitals, the coroner's office, the Post Office, the Kern County Housing Authority, the Bakersfield Rescue Mission, and a former employer. She was told that a Guillermo Conseco had signed into the Bakersfield Rescue Mission. She and an investigator went to the Mission but were unable to locate the man. The investigative assistant also searched the Kern County Recorder's Office, the Kern County Assessor's Office, the Kern County Family Court Services divorce index, and searched for Mr. Damian on Google, Facebook, and MySpace. The investigative assistant was unsuccessful.

After hearing argument, the trial court granted the prosecutor's motion to admit Mr. Damian's preliminary hearing testimony during the trial. Petitioner argues that this ruling deprived him of his right to confront and cross-examine his accuser in violation of the Sixth Amendment.[2]

## II.   STANDARD OF REVIEW

Habeas corpus is neither a substitute for a direct appeal nor a device for federal review of the merits of a guilty verdict rendered in state court. *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979) (Stevens, J., concurring). Habeas corpus relief is intended to address only "extreme malfunctions" in state criminal justice proceedings. *Id.* Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment, a petitioner can prevail only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003); *Williams v. Taylor*, 529 U.S. 362, 413 (2000). "By its terms, § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions set forth in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

---

[2] Petitioner also argues that this ruling was in violation of Article I, section 15 of the California Constitution. However, a federal writ is not available for alleged error in the interpretation or application of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

1      The AEDPA standard is difficult to satisfy since even a strong case for relief does not
2  demonstrate that the state court's determination was unreasonable. *Harrington*, 562 U.S. at 102.
3  "A federal habeas court may not issue the writ simply because the court concludes in its
4  independent judgment that the relevant state-court decision applied clearly established federal law
5  erroneously or incorrectly." *Lockyer*, 538 U.S. at 75-76.  "A state court's determination that a
6  claim lacks merit precludes federal habeas relief so long as 'fair minded jurists could disagree' on
7  the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (*quoting Yarborough v.
8  Alvarado*, 541 U.S. 652, 664 (2004)).  Put another way, a federal court may grant habeas relief
9  only when the state court's application of Supreme Court precedent was objectively unreasonable
10 and no fair-minded jurist could disagree that the state court's decision conflicted with Supreme
11 Court's precedent. *Williams*, 529 U.S. at 411.

12 **III.    CONFRONTATION CLAUSE**

13     Petitioner argues that his constitutional right to confront witnesses was violated when the
14 trial court allowed the prosecution to introduce Mr. Damien's preliminary hearing testimony at
15 trial.  The California Court of Appeal affirmed the trial court, finding that Mr. Damian was
16 unavailable and the prosecution had met their burden of showing that they exercised due diligence
17 in attempting to procure Mr. Damian's attendance at trial.

18     A. <u>Applicable Law</u>

19     The Sixth Amendment's confrontation clause, binding on the states through the Fourteenth
20 Amendment, bars the government from introducing testimonial statements of witnesses absent
21 from trial unless the declarant is unavailable and the defendant has had a prior opportunity to
22 cross-examine. U.S. Const., Amend. VI; *Crawford v. Washington*, 541 U.S. 36, 59 (2004).
23 Testimony at a preliminary hearing is a "testimonial statement" prohibited by the Sixth
24 Amendment. *Crawford*, 451 U.S. at 68.

25     "[T]he prosecution may introduce the prior testimony of a witness without running afoul of
26 the Sixth Amendment, as long as two criteria are met: 'First, the prosecutor must prove that the
27 witness is unavailable to testify at trial. Second, the defendant must have had the opportunity to
28 cross-examine the witness at the prior hearing.'" *Jackson v. Brown*, 513 F.3d 1057, 1082 (9th Cir.

2008)(*quoting Windham v. Merkle*, 163 F.3d 1092, 1102 (9th Cir. 1998)).With regards to unavailability, a witness is not "unavailable" for purposes of the exception to the confrontation requirement unless "the witness is unavailable despite good-faith efforts undertaken prior to trial to locate and present that witness." *Ohio v. Roberts*, 448 U.S. 56, 74 (1980) (overruled on other grounds in *Ohio v. Clark*, 135 S. Ct. 2173 (2015)). "The lengths to which the prosecution must go to produce a witness . . . is a question of reasonableness." *Id*. at 74 (citation omitted). Thus, where it is greatly improbable that a particular effort would have resulted in locating a witness and producing the witness at trial, reasonableness does not require undertaking the effort. *Id*. at 76. Even if there is a violation of the right to confrontation, habeas relief will not be granted unless the error had a substantial and injurious effect or influence in determining the jury's verdict. *Jackson*, 513 F.3d at 1084 (*citing Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

B.  Discussion

In this case, the prosecution made a good-faith effort to obtain Mr. Damian's presence at trial. A subpoena was issued over a month prior to scheduled date of trial. When Mr. Damian did not show up in court on October 11, 2011, the trial was trailed to the following day, and again for a half day. During this day and a half, an investigator went to Mr. Damian's last known residence, knocked and spoke with a neighbor who stated that she collected rent for Mr. Damian's last known residence and that Mr. Damian had moved to Mexico about a month and a half earlier. The investigator also attempted to find other witnesses in the case and did not uncover any signs that he was still in his last known city of residence. Also, an investigative assistant ran a name check through several databases and called several relevant organizations and was unsuccessful in locating him. The additional efforts to locate Mr. Damian were undertaken during a trial continuance, prior to trial.[3] The California Court of Appeal found that the record supported the trial court's conclusion that prosecution exercised due diligence in attempting to procure Mr. Damian's attendance at trial. The Ninth Circuit has affirmed district courts' conclusions that the

---

[3] The good faith effort to obtain a witness' presence at trial must be undertaken prior to trial. *Ohio v. Roberts*, 448 U.S. 56, 74 (1980). A certain amount of time prior to trial is not required by clearly established federal law. Here, a subpoena was issued a month before trial, and further diligence was conducted the day of the scheduled trial date, but still prior to trial.

prosecution made a good faith effort and the witness was unavailable at trial when the prosecution, through investigators and a police officer, took numerous actions aimed at securing the witnesses presence, including telephone calls and surveillance. *Schunn v. Schriro*, 284 Fed. Appx. 511 (9th Cir. 2008). The instant petition does not explain how the prosecution allegedly failed in making a good faith effort to produce Mr. Damian to testify at trial. However, the record demonstrates that the Court of Appeals finding was neither contrary to nor an unreasonable application of Supreme Court precedent.

Further, Petitioner had the opportunity to cross-examine Mr. Damian at the preliminary hearing. Petitioner has not demonstrated that the trial court's decision to allow Mr. Damian's preliminary hearing testimony into the record based on a finding that Mr. Damian was unavailable had a substantial and injurious effect or influence in determining the jury's verdict. Mr. Damian made unsworn statements to the sheriff deputy shortly after the crime, identifying Petitioner as the robber and identifying the knife used and clothing worn during the robbery. Then, at the preliminary hearing, Mr. Damian gave sworn testimony regarding the robbery and the succeeding identification, and Petitioner had the opportunity to cross-examine him. There is no reason to believe that Mr. Damian would have altered his testimony if he had been produced to testify at trial. The petition does not state how Mr. Damian's live testimony and Petitioner's cross-examination would have affected the outcome of the trial, and it is not likely that it would have had any effect.

Because Mr. Damian was unavailable despite the prosecution's good faith attempt to secure his presence at trial, and Petitioner had the opportunity to cross-examine Mr. Damian at the preliminary hearing, Petitioner's Sixth amendment right to confront witnesses was not violated. The Court of Appeals decision was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, nor was it based on an unreasonable determination of the facts.

### IV.   EVIDENTIARY HEARING

In his conclusion, Petitioner requests that the Court convene an evidentiary hearing to resolve all disputed issues of fact. Petitioner has not identified any disputed issues of fact to be

resolved. This request is denied.

## V. APPEALABILITY

For the reasons set forth above, Petitioner has not shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right [or] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Hence, the Court should decline to issue a certificate of appealability.

## VI. RECOMMENDATION

Based on the foregoing, it is RECOMMENDED that:

1. The petition for writ of habeas corpus be DENIED;
2. Judgment be ENTERED for Respondent; and
3. The Court DECLINES to issue a certificate of appealability.

These findings and recommendations are submitted to the Honorable Anthony W. Ishii, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, Petitioner may file written objections with the Court, serving a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **September 16, 2015**           **/s/ Sandra M. Snyder**
                                          UNITED STATES MAGISTRATE JUDGE

7